## Rex A. VOLLSTEDT,
*Appellant - .Cross-Respondent,*

*v.*

## Richard R. FREDERICKS,
*Respondent - Cross-Appellant.*

(16-86-07941; CA A48988)

814 P2d 525

David W. Harper, Portland, and Terry R. Anderson, Lake Oswego, argued the cause for appellant - cross-respondent. With them on the briefs was Harper, Leo & Associates, Portland.

Douglas R. Wilkinson, Springfield, argued the cause for respondent - cross-appellant. With him on the briefs was Thorp, Dennett, Purdy, Golden & Jewett, P.C., Springfield.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals a judgment for defendant in an action based on theories of breach of a stock pledge agreement, quasi-contract, constructive trust, conversion and breach of fiduciary duty. The court granted defendant's motion for a directed verdict on all of plaintiff's claims. Plaintiff assigns that ruling as error. Defendant cross-appeals from the court's refusal to award him reasonable attorney fees. We affirm on the appeal and reverse on the cross-appeal.

The transactions involved in this action are complex, and the parties' descriptions of them are even more so. We enumerate only the facts that are essential to an understanding of our decision. Plaintiff owned all of the outstanding stock of Vollstedt Volkswagen, Inc., an automobile dealership (Volkswagen). Defendant owned a majority of the stock of Bob Godfrey Pontiac, Inc., also an automobile dealership (Pontiac). On June 27, 1980, plaintiff as seller, Volkswagen as buyer and defendant as investor executed a stock sale and redemption agreement (the redemption agreement). Defendant agreed to purchase the stock that Volkswagen would redeem from plaintiff by furnishing Volkswagen the funds to pay plaintiff the down payment and certain other debts. The redemption agreement also provided:

"As security for the obligations of [Volkswagen] to [plaintiff] * * *, [defendant] will, at the time of closing, deliver to [plaintiff] certificates representing all shares of [Volkswagen] purchased by [defendant] pursuant to paragraph 6., duly endorsed in blank for transfer, together with a Stock Pledge Agreement in form attached as Exhibit E. In the event of default by [Volkswagen] in payment or performance of any obligation secured, [plaintiff] shall have no recourse against [defendant] other than the exercise of [plaintiff's] rights under that Stock Pledge Agreement."

At closing, the parties executed the required stock pledge agreement. It gave plaintiff a security interest in

"[a]ll common stock of [Volkswagen], now or hereafter owned by, or in the name of, [defendant], together with all products and proceeds thereof."

It secured the indebtedness and obligations owed plaintiff by defendant and Volkswagen under the agreements.

At closing, with plaintiff's consent, defendant assigned all of his rights in the Volkswagen stock to Pontiac, which executed a stock pledge agreement substantially identical in its terms to the one that defendant had executed. Pontiac actually provided the funds that defendant had agreed to invest in Volkswagen, which issued a certificate to Pontiac for all of the outstanding Volkswagen stock. Pontiac endorsed the certificate in blank and delivered it to plaintiff.

■ Over the next five years, a variety of transactions took place; in some of them the Volkswagen stock served as part of the consideration. Those transactions were made contingent on the protection of plaintiff's security and the satisfaction of Volkswagen's obligations to him. The net effect of the transactions was that defendant and the other parties to them obtained financial benefits, through business arrangements in which plaintiff was involved only as necessary to protect the security and the obligations owed him. The essential premise of all of plaintiff's claims is that the financial benefits that accrued to defendant by virtue of those arrangements are "proceeds" of the Volkswagen stock, within the meaning of the pledge agreement, and that plaintiff is entitled to share in those benefits to the extent of what he considers to be his security interest.

We disagree with that premise. No security interest attached to the stock in the hands of defendant, because he never obtained rights in the stock. *Former* ORS 79.2030.[1] Instead, the stock went directly to Pontiac pursuant to defendant's assignment, to which plaintiff consented. Plaintiff contends, however, that there was a "delayed attachment" of rights, because the agreements covered proceeds of the collateral as well as the collateral itself, and the augmented values and financial benefits that emerged from the subsequent transactions were "proceeds." However, under *former* ORS 79.3060(2), plaintiff cannot recover on that theory without proving that the supposed proceeds are identifiable and traceable to the original security. He failed to do so. Indeed, his showing was more to the effect that assets other than the Volkswagen stock became more valuable because the enterprises in which he was not a participant were profitable or

---

[1] We refer to the statutes in effect at the time of the 1980 agreements between plaintiff and defendant.

valuable, for reasons unrelated to him or to the stock that he sold and that was pledged to him.[2]

That analysis directly defeats plaintiff's contract, quasi-contract and constructive trust theories. His conversion and fiduciary duty claims are simply duplications of his contract theory using tort labels. We need not discuss plaintiff's other specific arguments. The directed verdict against him was proper.

■     Defendant cross-appeals from the court's denial of attorney fees. Plaintiff contends that the court was correct in denying fees, because he sued defendant for breach of his stock pledge agreement and, according to plaintiff, the court ruled that the agreement was not in effect. He argues that defendant cannot enforce the attorney fee provision of an agreement that defendant disavowed and that the court held was not in effect. However, plaintiff is incorrect in his understanding of the defenses and the court's ruling. Defendant did not disavow the existence of the agreement but, instead, prevailed on the theory that plaintiff was not entitled to recover under its terms.

Plaintiff also argues that, even if there was a contractual basis for attorney fees, the court should award defendant only the fees that he personally paid. Defendant tendered his defense to a third party,[3] who accepted it and provided him with counsel. Defendant's claim includes the fees of that counsel, even though *he* did not pay them. Plaintiff also asserts that defendant can only recover fees incurred in the defense of the contract claim and must apportion his claim for fees.

Plaintiff argues that to pay attorney fees to defendant for legal work by the third party's lawyers would give defendant a "windfall." We disagree. Defendant was a party to the action and prevailed. The third party's lawyers who conducted the defense acted as defendant's lawyers. Accordingly, the court must award defendant fees for the services of

---

[2] Because we conclude that plaintiff has not proven a right to what he describes as the proceeds of the security, we need not consider separately the effect of the "no recourse" provision in the redemption agreement.

[3] The third party was one of the participants in the post-1980 transactions who, apparently, had an indemnitor relationship with defendant.

those lawyers. Whether the third party could recover from defendant is not before us.

Only one of plaintiff's five claims was stated as a contract claim. However, as we have held, all of plaintiff's claims share common issues, and defendant need not apportion the attorney fees incurred in their defense. *See Estate of Wesley E. Smith v. Ware,* 307 Or 478, 769 P2d 773 (1989); *Greb v. Murray,* 102 Or App 573, 795 P2d 1087 (1990). We remand to the trial court to determine the amount of attorney fees to be awarded.

Affirmed on appeal; reversed and remanded on cross-appeal.